## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NUPRO TECHNOLOGIES, INC.,                )
                                         )
                        Plaintiff,       )
                                         )        Misc. Case No. _____
            v.                           )
                                         )        Re: NuPro Technologies, Inc. v.
E.I. DU PONT DE NEMOURS AND              )        E.I. du Pont Nemours and Company
COMPANY,                                 )        No. 1:06-CV-1061-NCT-PTS (M.D.N.C.)
                                         )
                        Defendant.       )
                                         )

### DECLARATION OF JASON WENKER IN SUPPORT OF NON-PARTY WITNESS' MOTION FOR A PROTECTIVE ORDER AND, IN THE ALTERNATIVE, MOTION TO QUASH SUBPOENA OF CYNTHIA BAUTISTA STOUFFER

I, Jason M. Wenker, declare and state as follows:

I am an attorney in the law firm of Kilpatrick Stockton LLP, counsel of record for non-party Cynthia Bautista Stouffer and defendant E.I. DuPont de Nemours and Company in the above-referenced matter. I have personal knowledge of all the facts contained herein and, if called to testify, could and would competently testify thereto.

1.    Attached hereto as Exhibit A is a true and correct copy of the June 2, 2008 subpoena served on Ms. Stouffer and commanding her deposition on Friday, June 13, 2008 in Wilmington, Delaware.

2.    Attached hereto as Exhibit B is a true and correct copy of the Amended Complaint filed in this action on February 6, 2008.

3.    Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Response to Defendant's Motion for Extension of Page Limits filed in this action on May 30, 2008.

4.    Attached hereto as Exhibit D is a true and correct copy of the Complaint filed in this action on November 9, 2006.

5.      Attached hereto as Exhibit E is a true and correct copy of Plaintiff's Motion to Dismiss Without Prejudice its Trade Secrets Claim filed in this action on April 14, 2006.

6.      Attached hereto as Exhibit F is a true and correct copy of a May 15, 2008 email from K. Cartledge to J. Wenker.

7.      Attached hereto as Exhibit G is a true and correct copy of a June 12, 2008 Letter from J. Wenker to G. Wilson.

8.      Attached hereto as Exhibit H is a true and correct copy of an email chain between K. Cartledge and J. Wenker spanning from April 8, 2008 through May 29, 2008.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 12 , 2008 at Winston-Salem, North Carolina.


                                        /s/  Jason M. Wenker
                                            Jason M. Wenker

# EXHIBIT A

A088 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the

# United States District Court

### District of Delaware

NUPRO TECHNOLOGIES, INC.

V.

E.I. DUPONT DE NEMOURS AND COMPANY

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:06 CV 1061
Middle District of North Carolina

TO: Cynthia Bautista Stouffer
     13 Paddington Court
     Hockessin, DE 19707

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to produce at the place, date and time specified below to testify at the taking of a deposition in the above case.
The deposition will be recorded by a duly qualified court reporter.

| PLACE OF TESTIMONY: | Doubletree Hotel 700 King Street Wilmington, DE 19801 | DATE AND TIME 6/13/08 at 10:00 a.m. |
|---|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

All documents regarding or referring to Optisol products and all documents regarding or referring to David Bradford, Nupro or any of its flexographic washout solvents in your possession.

| PLACE | Doubletree Hotel 700 King Street Wilmington, DE 19801 | DATE AND TIME 6/13/08 at 10:00 a.m. |
|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT). | DATE |
|---|---|
| Attorney for Plaintiff | 6/2/08 |

ISSUING OFFICE'S NAME, ADDRESS AND PHONE NUMBER

Kevin B. Cartledge, Wilson & Coffey, LLP, 110 Oakwood Drive, Suite 400, Winston-Salem, NC 27103
(336) 631-8866

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d) and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person – except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Format. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:06 CV 1061

| | | |
|---|---|---|
| NUPRO TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | |
| E.I. DU PONT DE NEMOURS AND COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff complaining of defendant alleges and says:

## FIRST CLAIM FOR RELIEF

1.     Plaintiff is a North Carolina corporation with its office and principal place of business in Winston-Salem, Forsyth County, North Carolina.

2.     Defendant is a Delaware corporation with its office and principal place of business in Wilmington, New Castle County, Delaware.

3.     Plaintiff is a manufacturer and developer of commercial solvents for sale in the printing industry.  Over the past decade, plaintiff focused its research and development on alternative solvents, environmentally safe products used primarily for cleaning printing equipment and machinery.  Plaintiff developed and patented two solvents, Nutre Clean FPX and Flex-O-XP; the appropriate patents were granted in 2001, 2003, and 2005.  Plaintiff also has a patent pending for a substantial benzene-based solvent, Nutre Clean XP, which was filed in 2004.

4.     In 1997, defendant approached plaintiff in an effort to study plaintiff's alternative solvent technology because the commercial solvents developed and marketed by defendant were not environmentally safe and were otherwise disadvantageous for commercial use. In response to defendant's approach, plaintiff agreed to share confidential and proprietary information and materials concerning its alternative solvent technology pursuant to a series of five confidentiality and nondisclosure agreements entered into by the parties from 1998-2004. Defendant was well aware that the alternative solvent processes and products developed by plaintiff were patented and protected trade secrets which were the exclusive technology of plaintiff.

5.     Pursuant to the early confidentiality agreements entered into by the parties, and in fulfillment of the requisite conditions precedent, plaintiff shared information and materials appropriately marked "Confidential" about its alternative solvent technology with defendant. After a period of study and evaluation, defendant informed plaintiff in September 1999 that it wished to acquire plaintiff's alternative solvent technology for $250,000, along with a long-term supply agreement, which plaintiff declined as grossly inadequate. Thereafter, defendant presented a supply agreement for alternative solvent chemistries to plaintiff in 2000, with the stated intent of having plaintiff manufacture its alternative solvents exclusively for defendant.

6.     Frustrated in its effort to acquire plaintiff's alternative solvent technology outright, in 2001 defendant undertook a fraudulent plan and scheme to misappropriate plaintiff's confidential information and know-how. In furtherance of this scheme, defendant repeatedly assured plaintiff that it wished to enter into a business relationship to purchase plaintiff's solvent products for use in its own operations, which were to be used and sold in conjunction with defendant's photopolymer plates and photopolymer plate processing equipment. Defendant additionally urged plaintiff to continue its confidential development of alternative solvent

2

technology with the promise of a long-term supply agreement which never materialized. Defendant further assured plaintiff that it did not wish to invest the time or resources necessary to develop alternative solvent technology on its own, but would rely on plaintiff to do so and share its research and product information with defendant pursuant to the serial confidentiality agreements of the parties. All of the foregoing misrepresentations were made without any present intention by defendant of ever complying with the confidentiality and nondisclosure agreements or entering into any long-term business relationship. These misrepresentations were also made by DuPont's representative Sheryl Cunningham, and affirmed and reinforced by DuPont's representatives Rajgopal Subramanian and Gregg Tashker at a meeting of the parties at defendant's offices in Wilmington, Delaware on December 4, 2003.

7.     In late 2003, also discussed at the December 4, 2003 meeting, defendant approached plaintiff about the development of a new alternative solvent chemistry to replace defendant's inferior Optisol product. Thereafter in February 2004, plaintiff learned that Exxon Corporation would no longer manufacture the Exxate products used to provide the active ingredient for defendant's Optisol, and so informed defendant. Defendant then requested that plaintiff develop an immediate replacement solvent for Optisol, which plaintiff furnished later that year through an alternative solvent known as Du Pont A.

8.     In early 2004, defendant ordered multiple drums of plaintiff's alternative solvents for the purpose of internal evaluation. These solvents were delivered to defendant's plant facility in Chestnut Run Plaza located in Wilmington, Delaware, along with confidential information and materials about plaintiff's products. The materials ordered by and shipped to defendant consisted of two drums of Nutre Clean FPX in February 2004; one drum of Nutre Clean XP; and one drum of DuPont A, the alternative solvent developed by plaintiff exclusively for defendant, in July

3

2004; and six drums of Nutre Clean XP in November 2004. In attempts to better understand how plaintiff's alternative solvents functioned and performed, defendant, on multiple occasions between 1998-2005, visited multiple photopolymer plate processing locations where plaintiff's alternative solvents were in use or being developed and evaluated. Upon information and belief, once defendant finally acquired a significant volume of plaintiff's solvents, it either used plaintiff's information, which was identified as "Confidential" in fulfillment of requisite conditions precedent, or undertook a chemical analysis of same in order to develop a product of its own, contrary to defendant's affirmative representations and in direct violation of the applicable confidentiality agreement of the parties.

9.    During 2004, plaintiff continued to market and sell its alternative solvents to various customers for evaluation and purchase, to which defendant objected because of its stated intention of purchasing plaintiff's products for use in its own operations.

10.    In early 2005, defendant suddenly ceased all communication of any kind with plaintiff, even refusing to return repeated telephone calls by plaintiff's president to defendant's offices. At the same time, defendant began introducing at select and controlled locations in the market what defendant claimed to be its own newly developed alternative solvent, Cylosol. In March or April 2005, plaintiff was informed by a flexographic plate developer, GMF-Mississauga, that defendant was conducting field evaluations of its Cylosol product. By June 2006, defendant began approaching plaintiff's customers with the offer of free product if the customers would test and evaluate defendant's Cylosol product for use in their printing operations. At the same time, defendant began disparaging plaintiff's alternative solvents to plaintiff's customers as damaging to equipment used in the printing industry. Upon information and belief and test results, Cylosol is an alternative solvent created from plaintiff's protected

4

alternative solvent products, as well as trade secrets and confidential information that were disclosed to defendant under the series of confidentiality agreements entered into by the parties.

11.    The pirating of plaintiff's patented and protected alternative solvent technologies, and the misappropriation misuse of trade secrets and confidential information that had been disclosed under the series of confidentiality agreements for the exclusive purpose of plaintiff working to provide defendant with an alternative solvent, were wilful and malicious acts, undertaken in the utmost bad faith, and constitute a material breach of the confidentiality agreements by defendant, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000, including loss of business and profits, which plaintiff is entitled to recover of defendant, with interest allowed by law.

## SECOND CLAIM FOR RELIEF

12.    Plaintiff realleges the allegations contained in paragraphs 1 through 11 of the first claim for relief, which are incorporated by reference herein as if the same were fully set forth.

13.    The promises and misrepresentations made by defendant to plaintiff as part of its fraudulent plan and scheme to acquire plaintiff's confidential and protected alternative solvent technology were false, made with the intent to defraud and did defraud plaintiff, and on which plaintiff reasonably relied to its detriment and damage.  As a proximate result of defendant's fraudulent conduct, plaintiff has been injured and damaged in a sum in excess of $10,000 in actual and punitive damages, which plaintiff is entitled to recover of defendant, with interest allowed by law.

### THIRD CLAIM FOR RELIEF

14.    Plaintiff realleges the allegations contained in paragraphs 1 through 13 of the first and second claims for relief, which are incorporated by reference herein as if the same were fully set forth.

15.    Defendant's misconduct constitutes unfair and deceptive acts or practices in competition and in trade or commerce, in violation of G.S. 75-1, -1.1, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000, which plaintiff is entitled to recover of defendant, with interest allowed by law, and trebling by the court pursuant to G.S. 75-16.

### FOURTH CLAIM FOR RELIEF

16.    Plaintiff realleges the allegations contained in paragraphs 1 through 15 of the first, second and third claims for relief, which are incorporated by reference herein as if the same were fully set forth.

17.    Plaintiff's confidential and protected alternative solvent technology constitutes trade secrets, which were misappropriated by defendant in violation of G.S. 66-154, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000 in actual and punitive damages, which plaintiff is entitled to recover of defendant, with interest allowed by law.

### FIFTH CLAIM FOR RELIEF

18.    Plaintiff realleges the allegations contained in paragraphs 1 through 19 of the first, second, third, fourth and fifth claims for relief, which are incorporated by reference herein as if the same were fully set forth.

6

19.     Unless defendant is preliminarily and permanently enjoined and restrained from marketing its knock-off Cylosol product, plaintiff will sustain immediate, irreparable, real and actual injury and harm.  There is probable cause that plaintiff will prevail on the merits, but in the meantime plaintiff has no adequate remedy at law absent the equitable intervention of the court.

20.     Defendant should therefore be preliminarily and permanently enjoined and restrained from marketing its knock-off Cylosol product, entitling plaintiff to injunctive relief pending litigation and upon the entry of a full and final judgment in this matter.

**WHEREFORE,** plaintiff respectfully prays the court that:

1.     Plaintiff have and recover of defendant actual and punitive damages in a sum in excess of $10,000, with interest allowed by law;

2.     Any recovery by plaintiff for unfair competition or trade practices be trebled by the court, pursuant to G.S. 75-16;

3.     The costs of this action, including reasonable attorney's fees pursuant to G.S. 66-154(d), G.S. 75-16.1 and 35 U.S.C.A. § 285, be taxed against defendant;

5.     Defendant be preliminarily and permanently enjoined from marketing its knock-off Cylosol product or any other imitation of plaintiff's confidential and protected alternative solvent technology;

6.     This action be tried by a jury; and

7.     The court grant such other and further relief as shall be just and proper.

Respectfully submitted this the 6th day of February, 2007.

/s/ G. Gray Wilson
G. Gray Wilson (NC State Bar #7398)

7

Kevin B. Cartledge (NC State Bar #24167)
Jason L. Jelinek (N.C. State Bar #34479)
Attorneys for Plaintiff NuPro Technologies, Inc.


OF COUNSEL:

WILSON & COFFEY, LLP
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*: gwilson@wilsoncoffey.com
          kcartledge@wilsoncoffey.com
          jjelinek@wilsoncoffey.com

8

## CERTIFICATE OF SERVICE

I, Jason L. Jelinek, hereby certify that on February 6, 2007 I electronically filed the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

TDeem@KilpatrickStockton.com

DTaylor@KilpatrickStockton.com .

Respectfully submitted

/s/ Jason L. Jelinek_____
Jason L. Jelinek (State Bar #34479)
Attorney for Plaintiff NuPro Technologies, Inc.,

OF COUNSEL:

WILSON & COFFEY, L.L.P.
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
*Phone*: (336) 631-8866
*Fax*:   (336) 631-9770
*E-mail*: gwilson@wilsoncoffey.com
        kcartledge@wilsoncoffey.com
        jjelinek@wilsoncoffey.com

9

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:06 CV 1061

| | | |
|---|---|---|
| NUPRO TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S RESPONSE TO** |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **EXTENSION OF PAGE LIMITS** |
| E.I. DU PONT DE NEMOURS AND | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**NOW COMES** plaintiff, NuPro Technologies, Inc. ("NuPro"), through counsel, and responds to defendant E.I. Du Pont De Nemours and Company's ("DuPont") motion for extension of page limits for the parties' briefing on motions for summary judgment. In response to this motion, NuPro shows unto the court as follows:

1.    It is accurate to state that the parties had business dealings and negotiations from approximately 1997 through 2004. It is also an accurate statement that NuPro asserted five affirmative claims for relief in its amended complaint which included claims for breach of five confidentiality agreements, misappropriation of trade secrets, fraud, unfair and deceptive trade practices and injunctive relief.

2.    Defendant fails to point out to the court in its motion, although the court is aware, that plaintiff has moved to dismiss its trade secrets claim based on the evidence obtained in discovery in this matter in February and March 2008. In addition, and as evidenced by the attached emails between counsel (copies attached hereto as Exhibits A and B, respectively) counsel for defendant has been requesting that counsel for plaintiff further narrow its claims and causes of action, which plaintiff's counsel has agreed to do. As evidenced by the attached

emails, the primary conduct at issue in this case occurred in late 2003 and throughout 2004. At defendant's request, plaintiff confirmed in writing that the 1998 and 2001 confidentiality agreements do not appear to be at issue at this time. Further, based on the testimony of plaintiff's expert witness (and as outlined in plaintiff's reply brief in support of its motion to dismiss its trade secrets claim), the active ingredient in defendant's Cylosol product is no longer an issue in plaintiff's breach of contract claims. As such, the only remaining issue on the breach of contract claims is whether defendant misappropriated or otherwise used confidential information regarding two ingredients in formulas provided to defendant by plaintiff. As such, the breach of contract claims appears to only involve the 2003 and 2004 confidentiality agreements, and the only issues involved in the breach of those agreements are whether defendant used two ingredients from plaintiff's formulas in its development of the Cylosol product.

3.      In addition, the attached emails confirm that plaintiff has informed defendant that it will not be seeking any injunctive relief. As a result, in actuality, this case involves only three causes of action: breach of confidentiality agreements regarding the possible misappropriation of two confidential ingredients in plaintiff's product, as well as fraud and unfair and deceptive trade practices in the manner in which defendant conducted its negotiations with plaintiff regarding these confidentiality agreements, the supply of confidential information and the development of a possible business relationship.

4.      Further, DuPont asserts in its motion that a resolution of these three limited claims requires explanation of the chemistry behind the flexographic printing process and printing solvents and the citation of evidence that requires explanation in the briefs. First, based on defendant's motions practice in this case, it has had the opportunity to brief numerous issues to

2

the court including a motion to dismiss, an objection to the recommendation of the magistrate judge requiring another brief to the court regarding the motion to dismiss, a motion for protective order with supporting brief, a motion to consolidate this matter with an alleged patent infringement claim, 1:08cv00199, and supporting brief, and a 20-page response brief to plaintiff's motion to dismiss its trade secrets claim without prejudice (despite the fact that plaintiff filed no brief in support of this motion).  As such, defendant has had and taken advantage of all opportunities available to it to explain the chemistry behind the flexographic printing process and printing solvents such that the court is well aware of the facts underlying the issues in this lawsuit.  The only thing to be addressed at this time is the claims for breach of confidentiality agreements, fraud and unfair and deceptive trade practices as limited by NuPro at defendant's request.  As such, the page limitations as stated in the local rules for summary judgment briefs are more than adequate for both parties to address the three remaining causes of action and to cite as necessary the evidence obtained through discovery in support of or in opposition to summary judgment motions.  There is nothing to be gained from extending the page limits other than to allow defendant to restate facts and allegations it has made in a number of previous briefs filed with the court that would be duplicative and unnecessary.

     5.    For these reasons, NuPro objects to defendant's motion seeking an extension of the page limits for summary judgment briefs.

    This the 30th day of May, 2008.

/s/ Kevin B. Cartledge        
G. Gray Wilson (NC State Bar #7398)
Kevin B. Cartledge (NC State Bar #24167)
Brian C. Focht (NC State Bar #36758)
Attorneys for Plaintiff NuPro Technologies, Inc.

OF COUNSEL:

WILSON & COFFEY, LLP
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*:GWilson@WilsonCoffey.com
        KCartledge@WilsonCoffey.com
        BFocht@WilsonCoffey.com

4

## CERTIFICATE OF SERVICE

I, Kevin B. Cartledge, hereby certify that on May 30, 2008 I electronically filed the

foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR EXTENSION**

**OF PAGE LIMITS** with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following:

DTaylor@KilpatrickStockton.com

TDeem@KilpatrickStockton.com

JWenker@KilpatrickStockton.com .

Respectfully submitted

/s/ Kevin B. Cartledge _____
Kevin B. Cartledge (NC State Bar #24167)
Attorney for Plaintiff NuPro Technologies, Inc.,

OF COUNSEL:

WILSON & COFFEY, L.L.P.
110 Oakwood Drive, Suite 400
Winston-Salem, NC  27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*:GWilson@WilsonCoffey.com
        KCartledge@WilsonCoffey.com
        BFocht@WilsonCoffey.com

# EXHIBIT D

| | | |
|---|---|---|
| NORTH CAROLINA | ) | IN THE GENERAL COURT OF JUSTICE |
| | ) | SUPERIOR COURT DIVISION |
| FORSYTH COUNTY | ) | 06 CVS 8228 |

C.S.C.

| | |
|---|---|
| NUPRO TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| E. I. DU PONT DE NEMOURS AND | ) |
| COMPANY, | ) |
| | ) |
| Defendant | ) |

**COMPLAINT**

Plaintiff complaining of defendant alleges and says:

### FIRST CLAIM FOR RELIEF

1.      Plaintiff is a North Carolina corporation with its office and principal place of business in Winston-Salem, Forsyth County, North Carolina.

2.      Defendant is a Delaware corporation with its office and principal place of business in Wilmington, New Castle County, Delaware.

3.      Plaintiff is a manufacturer and developer of commercial solvents for sale in the printing industry.  Over the past decade, plaintiff focused its research and development on alternative solvents, environmentally safe products used primarily for cleaning printing equipment and machinery.  Plaintiff developed and patented two solvents, Nutre Clean FPX and Flex-O-XP; these patents were granted in 2001, 2003, and 2005, respectively.  Plaintiff also has a patent pending for a substantial benzene-based solvent, Nutre Clean XP, which was filed in 2004.

4.      In 1997, defendant approached plaintiff in an effort to study plaintiff's alternative solvent technology because the commercial solvents developed and marketed by defendant were not environmentally safe and were otherwise disadvantageous for commercial use. In response to defendant's approach, plaintiff agreed to share confidential and proprietary information and materials concerning its alternative solvent technology pursuant to a series of confidentiality and nondisclosure agreements entered into by the parties from 1998-2004. Defendant was well aware that the alternative solvent processes and products developed by plaintiff were patented, protected trade secrets which were the exclusive technology of plaintiff.

5.      Pursuant to the early confidentiality agreements entered into by the parties, plaintiff shared information and materials about its alternative solvent technology with defendant. After a period of study and evaluation, defendant informed plaintiff in September 1999 that it wished to acquire plaintiff's alternative solvent technology for $250,000, along with a long-term supply agreement, which plaintiff declined as grossly inadequate. Thereafter, defendant presented a supply agreement for alternative solvent chemistries to plaintiff in 2000, with the stated intent of having plaintiff manufacture its alternative solvents exclusively for defendant.

6.      Frustrated in its effort to acquire plaintiff's alternative solvent technology outright, in 2001 defendant undertook a fraudulent plan and scheme to misappropriate plaintiff's confidential information and know-how. In furtherance of this scheme, defendant repeatedly assured plaintiff that it wished to enter into a business relationship to purchase plaintiff's solvent products for use in its own operations, which were to be used and sold in conjunction with defendant's photopolymer plates and photopolymer plate processing equipment. Defendant additionally urged plaintiff to continue its confidential development of alternative solvent

2

technology with the promise of a long-term supply agreement which never materialized. Defendant further assured plaintiff that it did not wish to invest the time or resources necessary to develop alternative solvent technology on its own, but would rely on plaintiff to do so and share its research and product information with defendant pursuant to the serial confidentiality agreements of the parties. All of the foregoing misrepresentations were made and reinforced at a meeting of the parties at defendant's offices in Wilmington, Delaware on December 4, 2003.

7.      In late 2003, also discussed at the December 4, 2003 meeting, defendant approached plaintiff about the development of a new alternative solvent chemistry to replace defendant's inferior Optisol product. Thereafter in February 2004, plaintiff learned that Exxon Corporation would no longer manufacture the Exxate products used to provide the active ingredient for defendant's Optisol, and so informed defendant. Defendant then requested that plaintiff develop an immediate replacement solvent for Optisol, which plaintiff furnished later that year through an alternative solvent known as Du Pont A.

8.      In early 2004, defendant ordered multiple drums of plaintiff's alternative solvents for the purpose of internal evaluation. These solvents were delivered to defendant's plant facility in Chestnut Run Plaza location in Wilmington, Delaware, along with confidential information and materials about plaintiff's products. The materials ordered by and shipped to defendant consisted of two drums of Nutre Clean FPX in February 2004; one drum of Nutre Clean XP, and one drum of DuPont A, the alternative solvent developed by plaintiff exclusively for defendant, in July 2004; and six drums of Nutre Clean XP in November 2004. In attempts to better understand how plaintiff's alternative solvents functioned and performed, defendant, on multiple occasions between 1998-2005, visited multiple photopolymer plate processing locations where plaintiff's alternative solvents were in use or being developed and evaluated. Upon information

3

and belief, once defendant finally acquired a significant volume of plaintiff's solvents, it either used plaintiff's information or undertook a chemical analysis of same in order to develop a product of its own, contrary to defendant's affirmative representations and in direct violation of the applicable confidentiality agreement of the parties.

9.      During 2004, plaintiff continued to market and sell its alternative solvents to various customers for evaluation and purchase, to which defendant objected because of its stated intention of purchasing plaintiff's products for use in its own operations.

10.     In early 2005, defendant suddenly ceased all communication of any kind with plaintiff, even refusing to return repeated telephone calls by plaintiff's president to defendant's offices. At the same time, defendant began introducing at select and controlled locations in the market what defendant claimed to be its own newly developed alternative solvent, Cylosol. In March or April 2005, plaintiff was informed by a flexographic plate developer, GMF-Mississauga, that defendant was conducting field evaluations of its Cylosol product. By June 2006, defendant began approaching plaintiff's customers with the offer of free product if the customers would test and evaluate defendant's Cylosol product for use in their printing operations. At the same time, defendant began disparaging plaintiff's alternative solvents to plaintiff's customers as damaging to equipment used in the printing industry. Upon information and belief and test results, Cylosol is an alternative solvent created from plaintiff's patented and protected alternative solvent products, as well as trade secrets and confidential information that were disclosed to defendant under the series of confidentiality agreements entered into by the parties.

11.     The pirating of plaintiff's patented and protected alternative solvent technologies, and the misappropriation misuse of trade secrets and confidential information that had been

4

disclosed under the series of confidentiality agreements for the exclusive purpose of plaintiff working to provide defendant with an alternative solvent, were wilful and malicious acts, undertaken in the utmost bad faith, and constitute a material breach of the confidentiality agreements by defendant, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000, including loss of business and profits, which plaintiff is entitled to recover of defendant, with interest allowed by law.

## SECOND CLAIM FOR RELIEF

12.    Plaintiff realleges the allegations contained in paragraphs 1 through 11 of the first claim for relief, which are incorporated by reference herein as if the same were fully set forth.

13.    The promises and misrepresentations made by defendant to plaintiff as part of its fraudulent plan and scheme to acquire plaintiff's confidential and protected alternative solvent technology were false, made with the intent to defraud and did defraud plaintiff, and on which plaintiff reasonably relied to its detriment and damage. As a proximate result of defendant's fraudulent conduct, plaintiff has been injured and damaged in a sum in excess of $10,000 in actual and punitive damages, which plaintiff is entitled to recover of defendant, with interest allowed by law.

## THIRD CLAIM FOR RELIEF

14.    Plaintiff realleges the allegations contained in paragraphs 1 through 13 of the first and second claims for relief, which are incorporated by reference herein as if the same were fully set forth.

15.    Defendant's misconduct constitutes unfair and deceptive acts or practices in competition and in trade or commerce, in violation of G.S. 75-1, -1.1, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000, which plaintiff is

5

entitled to recover of defendant, with interest allowed by law, and trebling by the court pursuant to G.S. 75-16.

## FOURTH CLAIM FOR RELIEF

16.    Plaintiff realleges the allegations contained in paragraphs 1 through 15 of the first, second and third claims for relief, which are incorporated by reference herein as if the same were fully set forth.

17.    Plaintiff's confidential and protected alternative solvent technology constitutes trade secrets, which were misappropriated by defendant in violation of G.S. 66-154, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000 in actual and punitive damages, which plaintiff is entitled to recover of defendant, with interest allowed by law.

## FIFTH CLAIM FOR RELIEF

18.    Plaintiff realleges the allegations contained in paragraphs 1 through 17 of the first, second, third and fourth claims for relief, which are incorporated by reference herein as if the same were fully set forth.

19.    Defendant's misconduct constitutes patent infringement in violation of 35 U.S.C.A. § 271, as a proximate result of which plaintiff has been injured and damaged in a sum in excess of $10,000 in actual and punitive damages, which plaintiff is entitled to recover of defendant, with interest allowed by law, and trebling by the court pursuant to 35 U.S.C.A. § 284.

## SIXTH CLAIM FOR RELIEF

20.    Plaintiff realleges the allegations contained in paragraphs 1 through 19 of the first, second, third, fourth and fifth claims for relief, which are incorporated by reference herein as if the same were fully set forth.

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:06 CV 1061**

| | | |
|---|---|---|
| NUPRO TECHNOLOGIES, INC. | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **PLAINTIFF'S MOTION TO** |
| v. | ) | **DISMISS WITHOUT** |
| | ) | **PREJUDICE ITS TRADE** |
| E.I. DU PONT DE NEMOURS AND | ) | **SECRETS CLAIM** |
| COMPANY | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**NOW COMES** plaintiff, NuPro Technologies, Inc. ("NuPro"), through counsel, pursuant Rule 41(a)(2) of the Federal Rules of Civil Procedure and Local Rule 7.3, and hereby respectfully moves the court for an order dismissing without prejudice its fourth claim for relief for misappropriation of trade secrets.   Plaintiff moves the court pursuant to Rule 41(a)(2) because the Rule 26(f) report set August 15, 2007 as the deadline for filing motions to amend the pleadings. See Miller v. Terramite Corp., 114 Fed. Appx. 536, 540 (4th Cir. 2004) (holding that Rule 15 is technically the proper vehicle to accomplish a partial dismissal of a single claim, but plaintiff may move under Rule 41(a)(2) because similar standards apply in both cases).   The factual allegations contained within the fourth claim for relief for misappropriation of trade secrets are not withdrawn as they relate and support the remaining claims of fraud, breach of the confidentiality agreements, and unfair and deceptive trade practices.    In support of this motion, plaintiff shows unto the court as follows:

1.     This litigation arises out of business dealings and a series of five confidentiality agreements between NuPro and defendant, E.I. Du Pont de Nemours and Company ("DuPont"),

beginning in 1997 and continuing through 2005, during which defendant fraudulently misappropriated plaintiff's confidential business and product information in breach of the confidentiality agreements in place. Using plaintiff's products and information in a manner violating the applicable confidentiality agreements, defendant developed and launched its own alternative solvent product rather than enter into a business relationship with plaintiff to supply its products to defendant as contemplated by the parties.

2.    On November 9, 2006, NuPro filed a complaint in the Forsyth County Superior Court against defendant, alleging breach of contract, fraud, unfair and deceptive trade practices, misappropriation of trade secrets, and patent infringement. On December 11, 2006, defendant removed the present action to the United States District Court for the Middle District of North Carolina, based on diversity of the parties and the federal question involved in the patent infringement claim.

3.    On January 17, 2007, defendant filed its motion to dismiss pursuant to Rules 12(b)(6), 8(a), and 9(b) of the Federal Rules of Civil Procedure. Plaintiff filed an amended complaint on February 6, 2007. The amended complaint abandoned plaintiff's patent infringement claim and provided additional factual allegations in support of plaintiff's other claims. On February 23, 2007, defendant filed its motion to dismiss plaintiff's amended complaint pursuant to Rules 12(b)(6), 8(a), and 9(b) of the Federal Rules of Civil Procedure. On October 5, 2007, this court denied defendant's motion to dismiss.

4.    On May 31, 2007, this court approved the Joint Rule 26(f) report which set August 15, 2007 and February 15, 2008 as the deadlines for filing motions to amend the pleadings and completion of all discovery, respectively. Following the approval of the Rule

2

26(f) report the parties determined that documents produced in discovery must be kept confidential and a motion for protective order was made by defendant on October 16, 2007. Magistrate Judge P. Trevor Sharp granted the protective order on December 10, 2007, allowing the parties to move forward with discovery. The 26(f) report, as amended on February 15, 2008, states that all discovery in this action is to end on June 16, 2008.

5.    On January 9, 2008, defendant served its responses to plaintiff's first set interrogatories and requests for production of documents. Defendant's responses included approximately 21,000 pages of documents which included thousands of pages of chemical testing data that could only be deciphered by a chemist with proper training and experience in the field of flexographic washout solvents. On March 26, 2008, April 3, 2008 and April 4, 2008, plaintiff deposed the following employees of defendant: Sheryl Cunningham, Mike Rudolph, Gregg Tashker, and David Debski. Based upon information learned through these depositions and exhaustive review of defendant's document production, plaintiff desires to voluntary dismiss its misappropriation of trade secrets claim against defendant pursuant to G.S. § 66-154 but to keep all remaining factual allegations and causes of action alleged in the amended complaint.

6.    Dismissal of the claim for misappropriation of trade secrets will not delay trial of this matter or unduly prejudice defendant because discovery that has already occurred was necessary to prove the remaining claims. Defendant has not filed a summary judgment motion; thus it has not incurred unnecessary costs associated with preparation for same. See Iraheta v. United of Omaha Life Ins. Co., 353 F. Supp. 2d 592, 596 (D.Md. 2005) (finding that defendant was not prejudiced by plaintiff's dismissal of claims after discovery was completed because the bulk of discovery would have been needed to prove the remaining claims).

3

**WHEREFORE,** plaintiff respectfully prays the court for an order dismissing without prejudice its fourth claim for relief for misappropriation of trade secrets, and for such other and further relief as shall be just and proper.

Respectfully submitted this the 14th day of April, 2008.

/s/ G. Gray Wilson _____
G. Gray Wilson (NC State Bar #7398)
Kevin B. Cartledge (NC State Bar #24167)
Jason L. Jelinek (NC State Bar #34479)
Attorneys for Plaintiff

OF COUNSEL:

WILSON & COFFEY, LLP
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*:GWilson@WilsonCoffey.com
        KCartledge@WilsonCoffey.com
        JJelinek@WilsonCoffey.com

4

## CERTIFICATE OF SERVICE

I, Kevin B. Cartledge, hereby certify that on April 14th, 2008 I electronically filed the foregoing **MOTION TO DISMISS WITHOUT PREJUDICE ITS TRADE SECRETS CLAIM** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

DTaylor@KilpatrickStockton.com

TDeem@KilpatrickStockton.com

JWenker@KilpatrickStockton.com

Respectfully submitted

/s/ Kevin B. Cartledge
Kevin B. Cartledge (NC State Bar #24167)
Attorney for Plaintiff

OF COUNSEL:

WILSON & COFFEY, L.L.P.
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*:GWilson@WilsonCoffey.com
        KCartledge@WilsonCoffey.com
        JJelinek@WilsonCoffey.com

5

# EXHIBIT F

## Kevin Cartledge

| | |
|---|---|
| **From:** | Wenker, Jason [jwenker@kilpatrickstockton.com] |
| **Sent:** | Thursday, May 15, 2008 6:00 PM |
| **To:** | Kevin Cartledge |
| **Cc:** | Taylor, Dan |
| **Subject:** | RE: Kanga Documents |

Kevin,

Thanks for your response on the breach of contract claim. Do you agree that there is no evidence that DuPont received Nutre Clean XP prior to July 2004? Also, do you agree that only XP, and not FPX, is the subject of the breach of contract claim?

Thanks,
Jason

> **From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
> **Sent:** Thursday, May 15, 2008 5:40 PM
> **To:** Wenker, Jason
> **Cc:** Taylor, Dan
> **Subject:** RE: Kanga Documents
>
> Jason,
>
> The Kanga documents should have arrived today. If they did not, let me know and I will make sure they arrive tomorrow. I do not know if the email attachments you refer to are "missing," or simply produced, but not attached to the email. Thus, we are going to print the email and the attachment and produce it to you in that form. If there is new production, then we will let you know and appropriately Bates Stamp and mark the new material.
>
> As for the breach of contract claim, I think that your last statement is accurate in that Nupro has no evidence at this point to prove that Dupont breached the 1998 or 2001 confidentiality agreements so they are not an issue at this time. As for when exactly the alleged breach of contract occurred, I do not think that I can pinpoint it to a particular time in 2004, or otherwise, as that would likely be a jury question. I do not want to be evasive, but I do not think that I can agree to be as particular as your email indicates. If we need to discuss, please call, and I will try to narrow the scope further if need be.
>
> Kevin

> **From:** Wenker, Jason [mailto:jwenker@kilpatrickstockton.com]
> **Sent:** Thursday, May 15, 2008 4:31 PM
> **To:** Kevin Cartledge; Taylor, Dan
> **Subject:** RE: Kanga Documents



> Kevin,
>
> Following our conversation Tuesday and further discussions yesterday, I write this email to clarify NuPro's breach of contract claim, which arises from the confidential disclosure agreements between the parties. Although Dr. Kanga's report mentions both Nutre Clean FPX and Nutre Clean XP, I understand that the only NuPro product

1

that is the subject of its breach of contract claim against DuPont is Nutre Clean XP. Thus, any alleged breach of contract by DuPont relates to Nutre Clean XP and could have occurred only in 2004 (more specifically, any such breach could have occurred only after DuPont's first receipt of Nutre Clean XP in July 2004, per the Amended Complaint). Moreover, per Dr. Kanga's report, "DuPont was not aware of the Nutre Clean XP formula," and thus the specific breach claimed by NuPro is analysis of XP for chemical composition and use of that information to create Cylosol. Given the foregoing, NuPro is not claiming that DuPont has breached the June 17, 1998 or March 1, 2001 confidential disclosure agreements.

Please let me know if my understanding is correct.

Also, please let me know when I can expect to receive the Kanga documents and the missing email attachments.

Thanks,

Jason

---

**From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
**Sent:** Wednesday, May 14, 2008 10:49 AM
**To:** Wenker, Jason; Taylor, Dan
**Subject:** Kanga Documents

This email will confirm our conversation yesterday. After reviewing the remaining documents, you agreed to the nonproduction of a few of those documents as either duplicative or unnecessary. With the exception of certain agreed upon redactions, all other documents that you have requested to be produced will be produced, including all documents that refer or relate to the alcohol replacement project. I am sending these documents, and all other Kanga documents to a third party vendor for Bates stamping, copying, and marking as highly confidential. As you know, some of these documents have been previously produced under the agreement that they would be considered highly confidential, and I will now be formally producing those documents with that designation. If there are any documents in your possession that are not included in this document production, please let me know, and I will have them appropriately Bates stamped and marked highly confidential.

I anticipate being able to provide you with the document production by tomorrow, depending on Ikon's speed in copying them. Also, we are in the process of gathering the email attachments you have requested and will let you know when that is completed.

Finally, following our conversation yesterday, I think that we can work out a reasonable solution regarding the breach of confidentiality claim and the FPX product. I understand you are under the weather today. Please call at your convenience to discuss.

Kevin


Kevin B. Cartledge
Wilson & Coffey, LLP
110 Oakwood Dr., Ste. 400
Winston-Salem, NC 27103
(T) 336-631-8866
(F) 336-631-9770
kcartledge@wilsoncoffey.com
Website: www.wilsoncoffey.com

2

***DISCLAIMER*** Treasury Department Circular 230 Disclosure: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein...

## Kevin Cartledge

| | |
|---|---|
| **From:** | Kevin Cartledge |
| **Sent:** | Friday, May 23, 2008 12:51 PM |
| **To:** | Wenker, Jason |
| **Cc:** | Taylor, Dan; Gray Wilson |
| **Subject:** | Nupro discovery issues |

This email follows several telephone conversations regarding Nupro's claims and discovery issues. Please let this email confirm the testimony of our expert witness in that 2 ethylhexyl acetate is not a part of plaintiff's remaining breach of contract claim based upon the documents produced by Dupont in February and March 2008, and there will be no evidence offered at trial by plaintiff that this ingredient was taken or misappropriated by Dupont. Thus, Nupro can no longer claim that the Cylosol product is a "knock-off" of Nupro's formulas, and Nupro will not be pursuing any temporary or permanent injunctive relief. Again, these concessions are based on information produced by Dupont in document production in this matter which has occurred in the last 3 months, and particularly the information showing the source of the suggestion of using 2 ethylhexyl acetate to Dupont. To the extent you need more formal documentation, let me know.

Also, this email will confirm that Nupro has no affirmative evidence that Dupont misappropriated the FPX formula. I cannot make any further assertion with regard to this formula or the confidential disclosure agreements, because there may be evidence from defendant in this regard.

Finally, with regard to the deposition of Cynthia Bautista, at this point we still are going forward with the deposition. If you will confirm in writing that you will not present evidence to contradict Mr. Bradford's testimony about her, her statements to him, the running of FPX at CTC, or otherwise call her as a witness, then we will forego the deposition. I can only tell you that our information is that FPX was run in the processors at CTC for approximately one year, somewhere in the time frame of late 2000, 2001 or 2002, when Ms. Bautista was communicating with Mr. Bradford, and before her employment with Dupont ended.

Lastly, I have gone back and reviewed the note pads we discussed the other day. Although there is a voluminous amount of irrelevant information, there is more responsive information than I originally recognized. Thus, I am producing them to you today in hard copy in the entirety, to be followed by disc next week. Please consider them highly confidential, as they will be marked as such, but I am producing them today so that you can have them as early as possible.

I will be communicating with Brenntag regarding Dupont's subpoena this afternoon and will call on your cell phone thereafter.

Kevin

Kevin B. Cartledge
Wilson & Coffey, LLP
110 Oakwood Dr., Ste. 400
Winston-Salem, NC 27103
(T) 336-631-8866
(F) 336-631-9770
kcartledge@wilsoncoffey.com
Website: www.wilsoncoffey.com



PLAINTIFF'S EXHIBIT

B

1

# EXHIBIT G



# KILPATRICK
# STOCKTON LLP

Attorneys at Law

1001 West Fourth St.
Winston-Salem NC 27101-2400
t 336 607 7300  f 336 607 7500
www.KilpatrickStockton.com

Jason M. Wenker
Direct Dial 336 607 7416
Direct Fax 336 734 2652
JWenker@KilpatrickStockton.com

June 12, 2008

*Via Email and U.S. Mail*

Gray Wilson, Esq.
Kevin Cartledge, Esq.
WILSON & COFFEY, L.L.P.
110 Oakwood Drive, Suite 400
Winston-Salem, North Carolina 27103

      **Re:**    ***NuPro Technologies, Inc. v. E.I. du Pont de Nemours and Company***
              ***U.S.D.C./M.D.N.C. 1:06-CV-1061-NCT-PTS***

Dear Gray and Kevin:

      This firm has been requested to represent Ms. Cynthia Bautista Stouffer regarding the June 2, 2008 subpoena and notice of deposition served on her by NuPro in this matter. This letter serves as Ms. Stouffer's formal objection to the subpoena, and particularly the request for production of documents on June 13, 2008 at 10:00 a.m. in Wilmington, Delaware. Ms. Stouffer objects to the production of the requested documents as overly broad and neither relevant to the claims or defenses in this matter nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Ms. Stouffer states that she retired from DuPont on June 30, 2001 and does not have in her possession, custody, or control any documents responsive to the subpoena.

                        Very truly yours,

                        Jason M. Wenker

JMW/lb

c:    Daniel R. Taylor, Jr.

# EXHIBIT H

## Wenker, Jason

| | |
|---|---|
| **From:** | Wenker, Jason |
| **Sent:** | Thursday, May 29, 2008 12:07 PM |
| **To:** | 'Kevin Cartledge' |
| **Cc:** | Taylor, Dan; Gray Wilson |
| **Subject:** | RE: Cynthia Bautista Stouffer |

Kevin,

Again, I have asked for documents showing shipments of the NuPro solvent that Mr. Bradford claims was run at CTC for 1.5 years (to help establish the timeframe allegedly at issue, which you have yet to pinpoint), or any other documents supporting Mr. Bradford's testimony, because I am not aware of any supporting evidence. I'd also like to know why you believe Ms. Stouffer's deposition is reasonably calculated to lead to the discovery of admissible evidence on this topic (or any other topic).

Because the subpoena is defective as outlined below, we are not required to take any steps to formally object or engage in motions practice. However, as should be clear from the email chain below and our communications, we do not believe Ms. Stouffer's deposition is relevant to any claim nor reasonably calculated to lead to the discovery of admissible evidence under Rule 26(b)(1). Further, the deposition violates the provisions of Rule 26 (b)(2)(C), and it appears that you are pursuing the deposition for improper purposes warranting a protective order.

I attempted again this morning, unsuccessfully, to reach Ms. Stouffer and obtain her home address. I will continue to follow-up and will forward her address as soon as I receive it.

Jason

> **From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
> **Sent:** Thursday, May 29, 2008 11:28 AM
> **To:** Wenker, Jason
> **Cc:** Taylor, Dan; Gray Wilson
> **Subject:** RE: Cynthia Bautista Stouffer
>
> I am willing to share anything with you that I think will affect your decision, but it has been made clear that there is no reason that would cause you or your client to not object to the taking Ms. Stouffer's deposition. As stated in your email, you have been asked to resist any efforts to have her deposition taken.
>
> Your objection to the subpoena is noted, but tells me little about the actual grounds. Since I do not have Mr. Stouffer's address, other than what I was able to obtain through my own efforts, I do not yet have service on her. Please provide me with her address so that I can serve her properly.
>
> Kevin
>
> > **From:** Wenker, Jason [mailto:jwenker@kilpatrickstockton.com]
> > **Sent:** Thursday, May 29, 2008 10:09 AM
> > **To:** Kevin Cartledge
> > **Cc:** Taylor, Dan; Gray Wilson
> > **Subject:** RE: Cynthia Bautista Stouffer
> >
> > Kevin,

If my attempt to accurately summarize your reasons for wanting to take Ms. Stouffer's deposition is incomplete, please let me know what I am missing. Obviously, we disagree on a number of points. I do not think I am out of line to note that you have changed your position regarding Ms. Stouffer's deposition, and that you have failed to provide an adequate reason for taking her deposition. Further, I strongly disagree with your characterization of our position as a delay tactic. While we remain willing to consider any additional information you might provide in helping to resolve this issue, it appears that you are unwilling to do so.

Like the prior subpoena, the subpoena we received yesterday is defective because it does not appear to have been properly issued or served under Rule 45. If you disagree, please let us know. Furthermore, it violates portions of Rule 26(b)(1) and (2).

Jason

---

**From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
**Sent:** Thursday, May 29, 2008 8:25 AM
**To:** Wenker, Jason
**Cc:** Taylor, Dan; Gray Wilson
**Subject:** RE: Cynthia Bautista Stouffer

There is no need for further discussion.   Your summary of the reasons why we want Ms. Stouffer's deposition is incomplete.  Your statement that I am backing out of our agreement regarding Ms. Stouffer when you clearly intend to end around same by using other witnesses to contradict Mr. Bradford's testimony, is out of line.  Regardless, given the fact that you will not agree to accept service, despite the fact that you will clearly be objecting to the deposition, it appears that your refusal to accept service is a delay tactic either on the part of Ms. Stouffer or Dupont.  In that regard, we will pursue relief from the court at the appropriate time.  Please provide her address to me as soon as possible.

Also, please advise if you are objecting to the subpoena for June 3 and if so, on what grounds?

---

**From:** Wenker, Jason [mailto:jwenker@kilpatrickstockton.com]
**Sent:** Wednesday, May 28, 2008 3:48 PM
**To:** Kevin Cartledge
**Cc:** Taylor, Dan; Gray Wilson
**Subject:** RE: Cynthia Bautista Stouffer

Kevin,

Several points in your email need clarification.  Most importantly, my email below stated that I would be happy to discuss accepting serving on behalf of Ms. Stouffer.  I did not say that I likely would accept service on her behalf (that was your language), and subsequent emails between us show that we never agreed to accept service on her behalf (as you conceded yesterday).  Given that you knew we did not agree to accept service on her behalf, I am not sure why you nonetheless have served us with subpoenas and apparently made no effort to serve Ms. Stouffer or independently determine her home address, which I do not have.  To summarize our position, we were willing to consider accepting service on her behalf if you could present an adequate basis for taking her deposition, and we do not believe you have done so.

As noted in the email chain below, you previously offered to forego deposing Ms. Stouffer if DuPont would agree not to call her as a witness at trial.  Not knowing what Mr. Bradford might say during his deposition, we agreed to wait until Mr. Bradford's deposition to further discuss this offer.  Having heard his testimony, we do not intend to call Ms. Stouffer as a witness at trial, and therefore, based on your previous offer, her deposition should not go forward.  However, it appears that your prior

offer no longer stands. Instead, you have recently stated that you would consider foregoing her deposition if DuPont would agree not to offer evidence contradicting certain testimony of Mr. Bradford's related to DuPont "running" NuPro's solvent at CTC for over a year. While we do not believe this testimony of Mr. Bradford's is relevant, we will not agree to forego presenting evidence to contradict this testimony if it is offered into evidence, given that we do not believe this testimony is accurate. However, DuPont can contradict this testimony without calling Ms. Stouffer as a witness at trial.

Despite your prior offer, your current position appears to be that Mr. Bradford's testimony has created two reasons that support taking Ms. Stouffer's deposition: (1) to confirm that Ms. Stouffer did not like Optisol; and (2) to determine whether DuPont "ran" NuPro's solvent at CTC for a year and a half (sometime between 2001 and 2003). We do not believe either issue has any bearing on NuPro's claims, nor do they provide a proper basis for taking Ms. Stouffer's deposition. I believe you have acknowledged that the second issue is the more significant of the two. That issue was never raised by NuPro until Mr. Bradford's deposition, despite the fact that you had the opportunity to question prior deponents (including Mr. Debski and Ms. Cunningham) about this topic. Nonetheless, and despite our belief that this topic is nothing more than a red herring, I told you after Mr. Bradford's deposition that I would look into this issue, which I did. I am not aware of any evidence that DuPont "ran" a NuPro solvent at CTC for over a year at any time; at most, as NuPro is aware, DuPont merely evaluated samples of NuPro's solvents at various times. Further, the time period during which Mr. Bradford believes NuPro's solvent was "run" at CTC may be after Ms. Stouffer left DuPont, and she has no knowledge of DuPont running NuPro's solvent at CTC for over a year. I informed you of this information yesterday, and also informed you that I am not aware of shipping documents supporting Mr. Bradford's testimony. You have provided me with no support for Mr. Bradford's statement, despite my request and your willingness yesterday to look for pertinent shipping documents, which NuPro or Brenntag should have if it exists. Further, you have previously agreed that FPX is not at issue in this case (and I believe that is the solvent Mr. Bradford contends was being "run" at CTC) and that none of the CDAs prior to late 2003 are the subject of the breach of contract claim. For these reasons, and without any explanation for why Ms. Stouffer should be deposed on this subject, we do not believe there is a proper basis for taking her deposition. Instead, it appears that your desire to depose Ms. Stouffer is simply an impermissible fishing expedition not reasonably calculated to lead to the discovery of admissible evidence.

Based on our understanding of your reasons for seeking to depose a former industrial hygienist who left DuPont around 2001/2002 (long before the operative facts in 2004), we do not believe her deposition is proper and we cannot agree to accept service for her at this time. Obviously, Ms. Stouffer's deposition will not go forward tomorrow, nor will it proceed on June 3, the date selected in the improper notice and subpoena we received from you this morning.

I have attempted to contact Ms. Stouffer to obtain her address, but she has not returned my message. As I mentioned in my voice message on Friday, I believe she may be out of town. I will let you know as soon as I hear from her. In the meantime, I remain available to discuss this issue with you at your convenience.

Jason

---

**From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
**Sent:** Wednesday, May 28, 2008 8:39 AM
**To:** Wenker, Jason
**Cc:** Taylor, Dan; Gray Wilson
**Subject:** RE: Cynthia Bautista Stouffer

Jason,

This email follows your voicemail to me on Friday and our conversation yesterday regarding the deposition of Cynthia Bautista Stouffer. As you know, I have

requested dates for her deposition on several occasions over the last two months. At your request, I held off noticing her deposition for a date after Mr. Bradford's deposition to see if an agreement could be reached to either proceed with her deposition or not, depending on his testimony and as discussed below. Also below is the email where you indicated that you would likely accept service on her behalf. As a result, I sent you a notice of deposition and subpoena 2 weeks ago. You informed me on Friday, for the first time, that service was not proper because you never agreed to accept service on her behalf.

When we spoke yesterday, I agreed that you technically did not agree to accept service on her behalf and I asked you for her address, which was not provided in discovery, so that I could serve her with a subpoena and notice of deposition. You informed me yesterday, again for the first time, that you do not have her address, despite the fact that you told me that you spoke to her last week. You then informed me that she is out of town and you do not know when she will return.

I believe that both sides have been very cooperative in this case regarding discovery and the many difficult issues that have arisen. However, with less than 3 weeks of time left for discovery and 2 weeks before I go on my vacation, which I have kept you informed about for months, I have no address for Ms. Stouffer, no agreement that you will accept service of process (despite the fact that you have indicated that you will be filing a motion to quash and for protective order if necessary to prevent the deposition from occurring), and no way of getting this information absent increased costs on the part of my clients to hire an investigator to find Ms. Stouffer or file a motion to compel.

Given the circumstances, I would request that you agree to accept service on her behalf, as indicated in your email below, or provide me with her address by the end of the day so that I can serve her with the subpoena and deposition notice. If you then wish ask the court to prevent the deposition from occurring, you can do so.

Kevin

---

**From:** Wenker, Jason [mailto:jwenker@kilpatrickstockton.com]
**Sent:** Thursday, April 17, 2008 1:07 PM
**To:** Kevin Cartledge
**Cc:** Taylor, Dan; Gray Wilson
**Subject:** RE: Cynthia Bautista Stouffer

Kevin,

DuPont has no intention of calling Ms. Stouffer as a witness at this time. However, until we take Mr. Bradford's deposition, it is not possible for us to agree not to call her as a witness at trial. I suggest we table this issue until after Mr. Bradford's deposition, at which time we can discuss your offer. Please let me know your thoughts.

Thanks,
Jason

---

**From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
**Sent:** Thursday, April 17, 2008 12:33 PM
**To:** Wenker, Jason
**Cc:** Taylor, Dan; Gray Wilson

**Subject:** RE: Cynthia Bautista Stouffer

Jason,

I have prepared a subpoena and notice of deposition.  However, you did not provide her address in Dupont's discovery responses.  Although I understand that you will likely accept service on her behalf, I still need an address for her and a deposition location, if you have a preference.  We will, of course, not attempt any communications with her except through your office.  Please confirm that you will accept service on her behalf, and if you no longer intend to object to my taking her deposition, please provide available dates.

Also, my offer still stands in that if you stipulate that Dupont will not call her as a witness at trial, I will withdraw my efforts and my notice of deposition and subpoena to her.  Please advise.

Kevin

---

**From:** Wenker, Jason [mailto:jwenker@kilpatrickstockton.com]
**Sent:** Friday, April 11, 2008 8:31 AM
**To:** Kevin Cartledge
**Cc:** Taylor, Dan; Gray Wilson
**Subject:** RE: Cynthia Bautista Stouffer

Kevin,

As I previously indicated to you, Ms. Stouffer has been on vacation.  She has now returned and has reconfirmed her desire that we represent her in connection with NuPro's efforts to depose her and further has expressed her desire that we object to and resist whatever efforts NuPro might make to depose her.

As you are aware, Ms. Stouffer left DuPont's employment around 2001, and, while with DuPont, was employed as an Industrial Hygienist.  We do not believe that she has any information remotely relevant or likely to lead to the discovery of admissible evidence arising out of what are clearly efforts to create a claim from NuPro's interaction with DuPont in the 2003-2004 timeframe.  Accordingly, should you notice and attempt to subpoena Ms. Stouffer for a deposition, we will seek a protective order in the appropriate forum.  If you choose to notice her deposition and issue a subpoena, we will be happy to discuss accepting service on behalf of Ms. Stouffer so that we can coordinate the timing of our motion for protective order.

Regards,
Jason

---

**From:** Kevin Cartledge [mailto:KCartledge@wilsoncoffey.com]
**Sent:** Tuesday, April 08, 2008 1:23 PM
**To:** Taylor, Dan; Wenker, Jason
**Cc:** Gray Wilson
**Subject:** Cynthia Bautista Stouffer

As we have discussed, plaintiff would like to depose Cynthia Bautista Stouffer.  Originally, we were told that you would be representing her and that we would be provided dates for her deposition.  You informed me last week, however, that you may object to my taking her deposition.  At that time, I asked Jason for a formal letter notifying me that Ms.

Stouffer has consented to your representation of her. Please provide me with this letter as soon as possible. Also, please let me know in writing if you intend to object to her deposition by the end of the week so that we can make a decision as to how to proceed while we still have time within our discovery period. Thanks, and I look forward to hearing from you.

Kevin B. Cartledge
Wilson & Coffey, LLP
110 Oakwood Dr., Ste. 400
Winston-Salem, NC  27103
(T)  336-631-8866
(F)  336-631-9770
kcartledge@wilsoncoffey.com
Website: www.wilsoncoffey.com

***DISCLAIMER*** Treasury Department Circular 230 Disclosure: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein...